**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center, Suite 200
Mesa, Arizona 85201
T: (480) 464-1111 F: (480) 464-5692
Attorneys for Plaintiff
Email: centraldocket@jacksonwhitelaw.com
By: Nathaniel Hill, No. 028151
nhill@jacksonwhitelaw.com
Michael R. Pruitt, No. 011792
mpruitt@jacksonwhitelaw.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alejandro Castillo, filing individually and on behalf of all others similarly situated, and Gary Humm, filing individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>K.B. Wallworx, Inc. an Arizona Corporation d/b/a K.B. Appliance, Kenneth Charles Bruning and Lori Ann Bruning, husband and wife, and Spencer's Air Conditioning & Appliance, Inc. an Arizona Corporation d/b/a/ Spencer's TV & Appliance;<br><br>Defendants. | Case No.: _____<br><br>**FLSA COLLECTIVE ACTION COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiffs, Alejandro Castillo, filing as an individual and on behalf of all others similarly situated, and Gary Humm, filing as an individual and on behalf of all others similarly situated, by and through their counsel undersigned, and for their Complaint allege as follows:

-1-

1. This action arises from the illegal employment actions of Defendants K.B. Wallworx, Inc. d/b/a KB Appliance, (KB Wallworx), Kenneth Charles Bruning, Lori Ann Bruning, and Spencer's Air Conditioning & Appliance, Inc. d/b/a Spencer's TV & Appliance (Spencer's) involving violations of the overtime wage provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.

2. As provided for under the FLSA, Plaintiffs bring this action on behalf of themselves and as a collective action on behalf of all other similarly situated current and former delivery and installation employees (the installation employees) working for KB Walworx at any time during the last three years delivering and installing televisions, appliances and other items bought at Spencer's TV & Appliance stores.

3. As a collective action, Plaintiffs will seek to provide notice to all other similarly situated installation employers of the opportunity to join this action by filing their consent with the Court. The Plaintiffs and any similarly situated installation employees who join this collective action are referred to herein as the Collective Action Members.

4. Pursuant to the legal definitions and statutory provisions of the FLSA, Defendants KB Wallworx and Spencer's served as joint employers of Plaintiffs and the other installation employees.

5. Defendant Kenneth Bruning acted directly or indirectly in the interest of employer KB Wallworx in relation to Plaintiffs and the other installation employees and is therefore legally their employer pursuant to the definitions and provisions of the FLSA.

6. Defendant Lori Ann Bruning acted directly or indirectly in the interest of employer KB Wallworx in relation to Plaintiffs and the other installation employees and is therefore legally their employer pursuant to the definitions and provisions of the FLSA.

7. The FLSA requires employers pay all covered employees an overtime wage of at least 1 ½ times their normal hourly compensation rate for all hours worked in excess of 40 hours in any workweek.

8. Defendants collectively engaged in an illegal and improper policy and practice of knowingly and willfully misclassifying Plaintiffs and the other installation employees as independent contractors.

9. Plaintiffs and the other installation employees do not meet the legal and statutory requirements to be classified as independent contractors and should rightly be classified as employees covered by the FLSA earning overtime wages for all hours worked over 40 in any workweek.

10. Defendants classified Plaintiffs and the other installation employees as independent contractors for the purpose of unjustly enriching themselves by not paying overtime wages.[1]

11. Plaintiffs and the other installation employees routinely worked well over 40 hours in a typical workweek without receiving overtime wages in violation of the FLSA.

12. As a result, Plaintiffs and the other installation employees have suffered economic damages in an amount to be proved at trial.

13. This action is brought to recover all damages available to the Plaintiffs and the Collective Action Members under the FLSA. This includes such things as unpaid overtime wages, liquidated damages, interest, and attorneys' fees and costs.

## JURISDICTIONAL ALLEGATIONS

14. As this matter arises under the FLSA, a federal statute, this Court has original and subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

15. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391 as the acts and omissions alleged herein occurred within the geographic region covered by the United States District Court for the District of Arizona.

---

[1] As a result of misclassifying Plaintiffs and the other installation employees as independent contractors, Defendants further enriched themselves by not paying the employer portion of required Social Security and Medicare employment taxes.

## THE PARTIES

16. Spencer's is an Arizona corporation d/b/a Spencer's TV & Appliance at multiple locations in Arizona.

17. Spencer's has annual revenue in excess of $500,000 and engages in interstate commerce as that term is defined by the FLSA.

18. Spencer's meets all legal definitions and statutory requirements under the FLSA to be the covered employer of Plaintiffs and the other installation employees.

19. KB Wallworx is an Arizona corporation d/b/a KB Appliance.

20. On information and belief, KB Wallworx has annual revenue in excess of $500,000 and engages in interstate commerce as that term is defined by the FLSA.

21. KB Wallworx meets all legal definitions and statutory requirements under the FLSA to be the covered employer of Plaintiffs and the other installation employees.

22. Defendant Kenneth Bruning is the President and a Director of KB Wallworx.

23. During the relevant time period, as Defendant Kenneth Bruning acted directly or indirectly in the interest of employer KB Wallworx in relation to Plaintiffs and the other installation employees and as such is an employer of Plaintiffs and the other installation employees under the FLSA.

24. Defendant Lori Ann Bruning is the Secretary and a Director of KB Wallworx.

25. During the relevant time period, as Defendant Lori Ann Bruning acted directly or indirectly in the interest of employer KB Wallworx in relation to Plaintiffs and the other installation employees and as such she is an employer of Plaintiffs and the other installation employees under the FLSA.

26. Kenneth Bruning and Lori Ann Bruning are husband and wife who reside in Maricopa County, Arizona.

27. All acts alleged in this Complaint against Defendant Kenneth Bruning or Defendant Lori Ann Bruning were performed on behalf of and for the benefit of their

marital community rendering that marital community liable to Plaintiffs and any Collective Action Members for damages as outlined herein.

28. Plaintiff Alejandro Castillo is employed by Defendants to deliver and install televisions, appliances and other similar items purchased at Spencer's TV & Appliance stores.

29. Plaintiff Castillo is a resident of Maricopa County in the State of Arizona.

30. Plaintiff Gary Humm is employed by Defendants to deliver and install televisions, appliances and other similar items purchased at Spencer's TV & Appliance stores.

31. Plaintiff Humm is a resident of Maricopa County in the State of Arizona.

32. During the relevant time period, Plaintiffs and the group of Collective Action Members were covered employees subject to the provisions and protections contained in the FLSA such as receiving overtime wages.

33. As required by the FLSA, 29 U.S.C. § 216(b), Plaintiff Castillo has filed his written consent form with the Court as an attached exhibit to this Complaint allowing him to proceed as a party in this action.

34. As required by the FLSA, 29 U.S.C. § 216(b), Plaintiff Humm has filed his written consent form with the Court as an attached exhibit to this Complaint allowing him to proceed as a party in this action.

## BACKGROUND FACTS

35. Spencer's operates multiple Spencer's TV & Appliance stores in Arizona selling televisions, appliances and other similar items.

36. Spencer's advertises and sells delivery and installation services for the products it sells.

37. Spencer's determines the amount charged for delivery and installation of the items it sells.

38. Spencer's determines the date for delivery and installation in consultation with the customer.

39. Spencer's customers pay Spencer's directly for delivery and installation services.

40. The Spencer's web site states on its "Our Services" web page:[2]

*Delivery + Installation*

Let the experienced professionals at Spencer's TV & Appliance handle your delivery and installation needs. Our knowledgeable experts will assure that your new products arrive safely and are installed properly. The new appliance will be tested to make sure it works correctly and all packing materials will be removed from your home. Any questions or needs you may have will be handled promptly and professionally.

Professional installation is recommended on certain products, and in some cases necessary to ensure warranty protection coverage. Our Customer Service Representative can help you decide which installation options are best for you. And, be sure to ask about possible delivery incentives and/or rebates available in your area.

PLEASE NOTE: We do not deliver outside of the state of Arizona.

41. The Spencer's web site also states on its "Essential Services at Spencer's TV & Appliance" web page:[3]

DELIVERY

Immediate delivery available on most items.

We ask customers to give the installers ample personal space while in your home.

We screen all employees everyday prior to going on deliveries.

Any employee with symptoms are not allowed to work.

Delivery teams are required to wear latex gloves, and bring cleaning products on all deliveries and installs

42. On information and belief, Spencer's salespersons are trained to offer delivery and installation services to customers who purchase televisions, appliances or other similar items.

---

[2] See https://www.spencerstv.com/services  accessed April 19, 2022
[3] See  https://www.spencerstv.com/essential-services accessed April 19, 2022

43. The customer invoice prepared by Spencer's includes such things as the installation charge for each item purchased. The invoice prepared by Spencer's also includes charges for required materials used by Plaintiffs and the other installation employees to complete each installation. These required materials include such things as installation kits, trim kits, hookup kits, brackets, hoses and fillers.

44. The costs charged for the kits and materials required for each installation are determined by Spencer's.

45. The Spencer's invoice notes an additional charge will be added if more than one trip to the customer's location is required or if the installer needs to cut or order fillers.

46. Spencer's collects sales tax from the customer on all delivery, installation and material charges.

47. Customers are required to report cosmetic damage directly to Spencer's within 48 hours of delivery and all returns are handled by Spencer's. The return policy on all purchased items is determined and set by Spencer's.

48. Spencer's invites each customer to complete a survey that includes questions asking the customer to rate the delivery staff and delivery experience.

49. On information and belief, Spencer's reviews this survey information as one metric it uses to measure and track the quality of the work performed by Plaintiffs and the other installations employees.

50. On information and belief, Spencer's has the power to take disciplinary action, up to and including termination, against Plaintiffs or any installation employees if Spencer's determines those employees are not performing up to standards set by Spencer's.

51. Spencer's contracts with several companies to deliver and install the TVs, appliances and other similar items it sells at its stores.

52. KB Wallwerx is one such company that has a contract with Spencer's to deliver and install TVs, appliances and other similar items sold at Spencer's TV & Appliance stores.

53. Paperwork on file with the Arizona Corporation Commission states that KB Wallworx is in the business of "Appliance Installation."

54. The specific fee paid to KB Wallworx by Spencer's covering for delivery and installation services is negotiated between KB Wallworx and Spencer's and set by contract.

55. KB Wallworx performs its delivery and installation operations using the company name KB Appliance.

56. On information and belief, KB Wallworx does not contract with any other appliance dealer to deliver and install TVs, appliances or other similar items.

57. Sometime on or about August, 2018, Plaintiff Castillo was hired by KB Wallworx to work as an installation employee.

58. Plaintiff Castillo was informed by KB Wallworx and Defendant Kenneth Bruning that he was an independent contractor.

59. Plaintiff Humm was also hired to work as an installation employee for KB Wallworx and classified as an independent contractor.

60. All other similarly situated installation employees were likewise classified as independent contractors.

61. During most or all of the relevant time, Plaintiffs and the other installation employees were compensated by being paid a set dollar amount for each day they worked plus a percentage of the amount paid for each TV or appliance the customer purchased at Spencer's stores.

62. Plaintiffs and the other installation employees were not paid overtime wages despite consistently working over 40 hours each workweek.

63. Despite being misclassified as independent contractors, Plaintiffs never negotiated, entered into, or signed an independent contractor agreement with KB Wallworx, Spencer's, Defendant Kenneth Bruning or Defendant Lori Ann Bruning.

64. Plaintiffs and the other installation employees did not negotiate the compensation or fees they received for their delivery and installation work.

65. The compensation Plaintiff Castillo receives for his delivery and installation work is typically calculated by KB Wallworx and Defendant Lori Ann Bruning. This amount is periodically deposited into Plaintiff Castillo's bank account by KB Wallworz using the cash transfer application Zelle. Plaintiff Castillo does not generally present an invoice to Defendants for payment.

66. Plaintiffs and the other installation employees receive a 1099-NEC form from KB Wallworx each tax year documenting the compensation they received during the calendar year.

67. Plaintiff Castillo is frequently referred to on paperwork and by Defendants using employee ID # KBW01. The letter portion (i.e., KBW) of the employee ID identifies Plaintiff Castillo is part of KB Wallworx.

68. Sometime in 2020, Plaintiff Castillo was informed by KB Wallworx and Defendant Kenneth Burning that he needed to form his own company. This was ostensibly because Plaintiff Castillo was classified as an independent Contractor.

69. On or about March 5, 2020, Plaintiff Castillo filed paperwork with the Arizona Corporation Commission to form Just Because Solutions, Inc. The filing fee was paid by KB Wallworx and Defendant Kenneth Burning.

70. Plaintiffs Castillo and Just Because Solutions, Inc. only deliver and install TVs and appliances purchased at Spencer's TV& Appliance stores. They do not solicit business from, or perform delivery or installation for, any other appliance dealer.

71. Plaintiffs and the other installation employees are required to wear KB Appliance shirts while working as installation employees.

72. Plaintiffs and the other installation employees are told when and where to start their workday. For example, Plaintiffs Castillo and Humm must report to a Spencer's warehouse at 5 am every workday. There they load the TVs, appliances and other items they will be delivering onto a trailer.

73. Periodic deductions marked as "trailer pymtn" were made to the compensation paid to Plaintiff Castillo ostensibly to purchase the trailer used to transport

the TVs and appliances. Despite making all required payments, the title to the trailer has not been transferred to Plaintiff Castillo and Defendant KB Wallworx remains the legal owner of the trailer.

74. Spencer's provides Plaintiffs and the other installation employees with the proprietary materials, installation kits, fittings, brackets, hoses, etc. required to complete each installation. Without these items supplied by Spencer's, Plaintiffs and the other installation employees could not perform their installation assignments.

75. Plaintiff Castillo was directed by Spencer's to download a cell phone application named Package AI for his Android cell phone. The application handled tasks related to scheduling of delivery and installation.

76. Spencer's paid a requiring charge or subscription to the software developer for Package AI and provided Plaintiff Castillo with a user name and password to logon to the application. Plaintiff Castillo did not pay for using Package AI.

77. Without Package AI, Plaintiff Castillo would not have been able to receive the days schedule and complete his delivery and installation assignments. Similarly, other installation employees were required to use Package AI to seduce and complete delivery and installation assignments.

78. The company marketing Package AI describes the application as, among other things:[4]

- an "AI [artificial intelligence] – powered messaging platform that turns deliveries into dollars;"
- Turns "fulfillment into an automated marketing machine;"
- A way to "Take control of your customer interactions in the last mile, Schedule, Converse, Track;"
- "Manage all customer interactions from 1 platform - Giving 'line of sight' to all departments on each interaction with each customer;" and

---

[4] See https://package.ai/ accessed April 19, 2022

- Allowing "Personalized upsell based on recent purchases and interactions."

79. Package AI allowed Spencer's to track Plaintiff Castillo in real time and continuously monitor his location using the GPS capability built into his cell phone.

80. Spencer's used Package AI to inform Plaintiff Castillo and other installation employees of the number of deliveries they had scheduled each workday. Plaintiff Castillo and other installation employees used the artificial intelligence capability built into the application to plan the days route, set schedule times and provide each customer with a two hour delivery window.

81. Plaintiff Castillo and other installation employees used Package AI to make notes updating Defendants about each delivery and installation.

82. After completing each installation, Plaintiff Castillo and other installation employees were required to take pictures documenting their work and upload it to Package AI. This allowed Defendants to review and monitor the installation work of Plaintiff Castillo.

83. The Package AI website home page includes several customer testimonials. One prominent testimonial from Spencer's states:

> *With PACKAGE.AI, we were able to reduce 3 hours of labor units across 8 different touchpoints in the fulfillment process!* **Bottom line – Do more with less by saving us at least 24 hours of labor units each day.** Julian Ramon, IT Director, Spencer's TV & Appliance [Emphasis in original]

84. Spencer's, KB Wallworx, Defendant Kenneth Bruning and Defendant Lori Ann Bruning used frequent text messages, emails and Package AI to monitor, direct, request status updates, communicate with, and provide schedule updates to supervise and control the work schedule and conditions of employment for Plaintiffs and the other installation employees.

85. Records kept by Defendants document the time when Plaintiffs and the other installation employees arrived at the customer location and the time when they completed the job.

-11-

86. Plaintiffs and the other installation employees could not decide which delivery or installation assignments to accept or reject. For example, when Plaintiff Castillo attempted to reject a delivery and installation assignment for a customer who had been rude during a previous install, he was informed that he had to perform that delivery and installation.

87. If the actions of Plaintiffs or other installation employees resulted in damage to customer property or a delivery item, a deduction was made by Defendants from their compensation.

88. On information and belief, Spencer's monitored the reviews it solicited from its customers. Negative customer reviews, complaints to Spencer's about Plaintiffs or the other installation employees, or actions by Plaintiffs or other installation employees could lead to counseling, discipline or potential termination. For example, on one occasion a customer complained to Spencer's that an installation employee had urinated into a bottle and deposited it into the customer's trashcan. Despite Plaintiff Castillo denying responsibility and stating that another installation employee was responsible, Spencer's directed that a deduction be made from the compensation of Plaintiff Castillo as punishment. On another occasion, Plaintiff Castillo informed a Spencer's customer that a defective oven previously installed by KB Wallworx could be repaired and did not need to be replaced. The customer had the oven repaired and returned a replacement oven purchased from Spencer's for a refund. A Spencer's representative directed Defendant Kenneth Burning to "Please tell Alex to keep his opinion of the previous install to himself." Spencer's also discussed having Plaintiff Castillo repay the salesman for the lost commission due to replacement oven being returned.

89. As described herein, Plaintiffs and the other installation employees were economically dependent on KB Wallworx and Spencer's and not in business for themselves

**Plaintiffs and the Collective Action Members are
Employees and not Independent Contractors**

90. As described herein, Plaintiffs and the Collective Action Members were employees and did not meet the legal or statutory requirements needed to be classified as independent contractors by Defendants.

91. Defendants controlled in all important aspects the manner in which Plaintiffs and the Collective Action Members performed their work. Examples include but are not limited to:

- Plaintiffs and the Collective Action Members did not control their daily work schedule. Defendants set the mandatory start time and required Plaintiffs and the Collective Action Members show up at a Spencer's warehouse. Once at the warehouse, Plaintiffs and the Collective Action Members load a trailer with the items Spencer's had scheduled for delivery and installation on that day;
- Plaintiffs and the Collective Action Members were not free to determine which jobs to accept or reject;
- Defendants provided indispensable tools and materials that Plaintiffs needed to perform their duties. These included the TVs and appliances that would be delivered and installed, a trailer, the Package AI application, and proprietary installation kits, hoses, brackets and other similar items;
- Defendants closely monitored, tracked and supervised Plaintiffs and the Collective Action Members;
- Defendants supervised and directed the work of Plaintiffs and the Collective Action Members during the workday through cell phone conversations, text messages and emails;
- Plaintiffs and the Collective Action Members did not negotiate or set the compensation they received for their delivery and installation work;
- Plaintiffs and the Collective Action Members were required to wear shirts that stated they worked for KB Appliances;

- Defendants had the power to discipline Plaintiffs and the Collective Action Members;
- Plaintiffs and the Collective Action Members were not free to perform work for other appliance dealers; and
- Plaintiffs and the Collective Action Members were economically dependent on KB Wallworx and Spencer's and were not in business for themselves.

92. Plaintiffs and the Collective Action Members opportunity for profit or loss did not depend in any meaningful way on their management skills. Plaintiffs and the Collective Action Members received a guaranteed set dollar amount for each day they worked along with a percentage of the cost of the items scheduled for delivery and installation by Spencer's irregardless of their management skill or lack thereof.

93. The essential equipment and materials required to perform delivery and installation were provided by Defendants and not obtained through investment by Plaintiffs or the Collective Action Members. These required materials included the TVs and appliance sold by Spencer's, the Package AI application, and the required proprietary materials, installation kits, fittings, brackets, hoses and similar items needed to complete each installation. In addition, Plaintiff Castillo made payments to KB Wallworx through payroll deductions for the trailer he used for transport and delivery, without ever receiving the title.

94. The delivery and installation service performed by Plaintiffs and the Collection Action Members required care, attention to detail, the ability to follow installation directions and the strength to lift heavy objects. It did not require special training, certification, higher education, initiative, judgment or foresight.

95. Plaintiffs and the Collective Action Members did not perform work for, or solicit business from, other appliance dealers exhibiting a significant degree of permanence and an expectation of a continued working relationship. This is evidenced by Plaintiff Castillo maintaining a continuous working relationship with Defendants from August of 2018 through the present.

96. The delivery and installation service performed by Plaintiffs and the Collective Action Members are an essential and integral part of the business for both Spencer's and KB Wallworx. Spencer's prominently features delivery and installation services on its website and offers it to every customer who purchases a TV or appliance. Spencer's also lists "immediate delivery" on its "Essential Services at Spencer's TV & Appliance" web page. KB Wallworx has contracted with Spencer's to provide delivery and installation services. KB Wallworx also stated in paperwork filed with the Arizona Corporation Commission that it is in the business of appliance installation, which would be impossible without installation employees such as Plaintiffs and the Collective Action Memebers.

**KB Wallworx and Spencer's are Joint Employers
of Plaintiffs and the Collective Action Members**

97. As described herein, the entirety of the employment situation and the economic realities of the of the work relationship document that Defendants KB Wallworx and Spencer's were joint employers of Plaintiffs and the Collective Action Members.

98. While Plaintiffs and the Collective Action Members were hired by KB Wallworx to work as installation employees, as alleged herein, both KB Wallworx and Spencer's exerted considerable influence over the work relationship and employment situation. For example, both KB Wallworx and Spencer's could cause Plaintiffs and the Collective Action Members to be counseled and disciplined. On information and belief, Spencer's could direct that specific installation employees be terminated by KB Wallworx. Spenver's could also effectively terminate an installation employee by not scheduling them for deliveries.

99. As described herein, both KB Wallworx and Spencer's supervised and controlled the work schedules and conditions of employment for Plaintiffs and the Collective Action Members.

100.  As described herein, both KB Wallworx and Spencer's were involved in determining the rate and method of payment for Plaintiffs and the Collective Action Members.

101.  Both KB Wallworx and Spencer's maintained extensive employment records for Plaintiffs and the Collective Action Members. These include but are not limited to, such things as work schedules, records of actual hours worked, performance metrics, customer reviews, compensation records, extensive text message and emails related to their employment, notes, HR related records, contact information and the data contained in Package AI.

### FLSA and Collective Action Allegations

102.  Under the FLSA, each Defendant acting as an employer is jointly and severally liable for the injuries and damages sustained by Plaintiffs and the Collective Action Members.

103.  Plaintiffs and the other installation employees operated under a common set of policies and procedures covering such things as the delivery and installation process, compensation, interactions with customers, and expected job performance.

104.  Plaintiffs have firsthand personal knowledge of the hours worked, compensation practices and the terms and conditions of employment of their fellow installation employees. This knowledge was gained through extensive interaction with the other installation employees and Defendants.

105.  Plaintiffs and the other Collective Action Members routinely worked well in excess of forty hours during most workweeks without receiving overtime wages. The actual time spent at each customer location is documented in Package AI.

106.  This collective action arises from an ongoing illegal and improper scheme by Defendants to systematically and willfully violate the provisions of the FLSA by failing to pay legally mandated overtime wages to Plaintiffs and the other installation employees.

107. Given the willful violations of the FLSA alleged herein, Plaintiffs and the Collective Action Members are entitled to use a three year statute of limitations period for the recovery of overtime wages as provided for by the FLSA, 29 U.S.C. § 255.

108. The actions of Defendants as the employers of Plaintiff and the other Collective Action Members were not taken in good faith and Defendants did not have a reasonable basis for believing that their compensation practices did not violate the FLSA allowing for the collection of liquidated damages.

109. The bad faith and willful violations of the FLSA taken by Defendants in failing to pay overtime wages resulted in economic damages to Plaintiffs and the other Collective Action Members.

110. As a collective action, all other current and former installations employees working at any point during the last three years may join this lawsuit by filing a properly executed consent to join form with the Court.

111. Plaintiffs intend to seek an order from the court providing notice to all other similarly situated current and former installation employees of the pendency of this action and their right to join this lawsuit as a Collective Action Member pursuant to the provisions of 29 U.S.C. § 216(b).

112. Given that Plaintiff has alleged a willful violation of the FLSA on the part of Defendants, the relevant time period for such notice is three years prior to the filing of this Complaint.

**COUNT 1**
**(Violation of the FLSA, 29 U.S.C. § 201 et seq.)**

113. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

114. Plaintiff and the other Collective Action Members are covered employees legally entitled to collect all unpaid overtime wages due them under the FLSA.

115. Each Defendant met the requirements and legal definition under the FLSA for being an employer of Plaintiffs and the other Collective Action Members.

116. Defendants willfully and in bad faith misclassified Plaintiffs and the other Collective Action Member as independent contractors. .

117. Plaintiffs and the other Collective Action Members routinely worked in excess of forty hours during most workweeks without receiving the overtime wages due them under the FLSA.

118. As a result of this illegal policy and practice, Plaintiffs and the other Collective Action Members have suffered economic damages in an amount to be proved at trial.

119. The policy of not paying overtime wages was knowing, willful, and not taken in good faith. This entitles Plaintiffs and the other Collective Action Members to extend the recovery period for damages from two years to three years as provided for by the FLSA, 29 U.S.C. § 255(a) and collect liquidated damages in an amount equal to their economic damages.

120. As provided for by the FLSA, Defendants are liable to Plaintiffs and the other Collective Action Members for their reasonable attorneys' fees and costs.

121. As a result of the illegal actions described herein, Defendants are liable to Plaintiffs and the other Collective Action Members for such other relief and damages as are available to them and as provided for by law.

**WHEREFORE,** Plaintiffs individually and on behalf of those similarly situated requests that this Court enter judgment in their favor and against Defendants as follows:

A. Declare and certify that this action can proceed as a collective action by Plaintiffs on behalf of all similarly situated current and former installation employees working for KB Wallworx at any time during the past three years;

B. Issue an Order that notice of this collective action shall be expeditiously sent to the designated class of Collective Action Members informing them of the opportunity to participate in this collective action through the filing of consent to join forms with the Court;

C. Declare that Plaintiffs and all Collective Action Members are employees legally entitled to collect unpaid overtime wages;

D. Declare that the actions of Defendants in failing to not pay overtime wages was willful and not taken in good faith;

E. Declare that Plaintiffs and all Collective Action Members are legally entitled to a three year recovery period for the purpose of collecting unpaid overtime wages;

F. Enter a judgment against Defendants in an amount to be proved at trial as compensation to Plaintiffs and all Collective Action Members for their unpaid overtime wages;

G. Declare that Plaintiffs and all Collective Action Members are legally entitled to collect liquidated damages;

H. Declare that Plaintiffs and all Collective Action Members are legally entitled to collect their reasonable attorneys' fees and costs;

I. Declare that Plaintiffs and all Collective Action Members are entitled to all other relief and remedies available to them under law due to the illegal and improper actions of Defendants described herein;

J. Award Plaintiffs and all Collective Action Members interest at the highest legal rate allowable on all sums awarded in judgment from the date of judgment until paid;

K. Award Plaintiffs and all Collective Action Members prejudgment interest on all liquidated sums awarded at the highest legal rate allowable;

L. That this Court retain jurisdiction over this action to ensure full compliance with the Court's orders and require Defendants file such reports as the Court deems necessary to document compliance; and

M. For all other further relief as this Court deems just and proper.

**DATED** this 10th day of May, 2022.

        **JACKSON WHITE**
        <u>s/ Nathaniel Hill</u>
        By: Nathaniel Hill, No. 028151
        Michael R. Pruitt, No. 011792
        40 North Center Street, Suite 200
        Mesa, Arizona 85201
        Attorneys for Plaintiff

F:\ABC\Castillo, Alejandro\Pleadings\Complaint.OT.Castillo.docx