**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alejandro Castillo, et al., | No. CV-22-00798-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| K.B. Wallworx Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' motion for preliminary certification of a collective action under the Fair Labor Standards Act ("FLSA"). (Doc. 41.) For the following reasons, the motion is granted.

## BACKGROUND

On May 10, 2022, Plaintiffs Alejandro Castillo and Gary Humm filed this FLSA collective action against Spencer's Air Conditioning & Appliance Incorporated, doing business as Spencer's TV & Appliance, ("Spencer's"), K.B. Wallworx Incorporated, doing business as K.B. Appliance ("KB Wallworx"), Kenneth Charles Bruning, and Lori Ann Bruning (together, "the Brunings"). (Doc. 1.) "Plaintiffs bring this action on behalf of themselves and as a collective action on behalf of all other similarly situated current and former delivery and installation employees (the installation employees) working for KB Walworx at any time during the last three years delivering and installing televisions, appliances and other items bought at Spencer's TV & Appliance stores." (*Id.* ¶ 2.) Plaintiffs assert that "[p]ursuant to the legal definitions and statutory provisions of the

FLSA, Defendants KB Wallworx and Spencer's served as joint employers of Plaintiffs and the other installation employees." (*Id.* ¶ 4.)

The allegations in the complaint are as follows. Spencer's operates a chain of stores in Arizona selling televisions and various appliances. (*Id.* ¶ 35.) Spencer's also advertises and sells delivery and installation services for its products. (*Id.* ¶ 36.) Spencer's sets the cost and schedule for delivery and installation services and customers pay Spencer's directly for these services. (*Id.* ¶¶ 37-39.) Spencer's website invites customers to "[l]et the experienced professionals at Spencer's TV & Appliance handle [their] delivery and installation needs" and informs customers that Spencer's "screen[s] all employees [for symptoms of illness] everyday [sic] prior to going on delivery." (*Id.* ¶¶ 40-41.)

Spencer's contracts with several companies to deliver and install its products, including KB Wallworx. (*Id.* ¶¶ 51-52.) KB Wallworx "is in the business of 'Appliance Installation'" and receives a fee from Spencer's for providing delivery and installation services. (*Id.* ¶¶ 53-54.) KB Wallworx "does not contract with any other appliance dealer." (*Id.* ¶ 56.)

KB Wallworx hired Plaintiffs to work as installation employees. (*Id.* ¶¶ 57, 59.) "Plaintiffs and the other installation employees were compensated by being paid a set dollar amount for each day they worked plus a percentage of the amount paid for each TV or appliance the customer purchased at Spencer's stores" but "were not paid overtime wages despite consistently working over 40 hours each workweek." (*Id.* ¶¶ 61-62.)

KB Wallworx classified Plaintiffs and others as "independent contractors," but "Plaintiffs never negotiated, entered into, or signed an independent contractor agreement" and "did not negotiate the compensation or fees they received for their delivery and installation work." (*Id.* ¶¶ 58-60, 63-64.) "Plaintiffs and the other installation employees are told when and where to start their workday" and "are required to wear KB Appliance shirts while working." (*Id.* ¶¶ 71-72.) "Spencer's provides Plaintiffs and the other installation employees with the proprietary materials, installation kits, fittings, brackets, hoses, etc. required to complete each installation." (*Id.* ¶ 74.) Spencer's also required

installation employees to download a cell phone application called "Package AI" that allowed Spencer's "to inform Plaintiff Castillo and other installation employees of the number of deliveries they had scheduled each workday" and "to track Plaintiff Castillo in real time and continuously monitor his location using the GPS capability built into his cell phone." (*Id.* ¶¶ 75, 79-80.) Spencer's paid the subscription fee for this app. (*Id.* ¶ 75.) "Spencer's, KB Wallworx, [and the Brunings] used frequent text messages, emails and Package AI to monitor, direct, request status updates, communicate with, and provide schedule updates to supervise and control the work schedule and conditions of employment for Plaintiffs and the other installation employees." (*Id.* ¶ 84.) "Plaintiffs and the other installation employees could not decide which delivery or installation assignments to accept or reject." (*Id.* ¶ 86.) Spencer's dissatisfaction with an installation employee "could lead to counseling, discipline or potential termination." (*Id.* ¶ 88.) The complaint asserts that "Plaintiffs and the Collective Action Members were employees and did not meet the legal or statutory requirements needed to be classified as independent contractors by Defendants" and that "Defendants KB Wallworx and Spencer's were joint employers of Plaintiffs and the Collective Action Members" and alleges facts to support these assertions. (*Id.* ¶¶ 90-101.)

Plaintiffs assert that they "and the other Collective Action Members routinely worked well in excess of forty hours during most workweeks without receiving overtime wages" due to "an ongoing illegal and improper scheme by Defendants to systematically and willfully violate the provisions of the FLSA." (*Id.* ¶¶ 105-06.)

On July 26, 2022, Spencer's filed an answer to the complaint. (Doc. 19.)

On August 12, 2022, KB Wallworx and the Brunings filed a motion to dismiss for lack of subject-matter jurisdiction. (Doc. 23.) That motion later became fully briefed. (Docs. 25, 33.)

On August 31, 2022, the Court issued a scheduling order. (Doc. 28.)

On January 17, 2023, Plaintiffs, KB Wallworx, and the Brunings filed a notice of settlement (Doc. 36), and the Court denied the motion to dismiss those Defendants as moot

(Doc. 37).

On February 16, 2023, Plaintiffs filed a notice of dismissal (Doc. 38), pursuant to which KB Wallworx, and the Brunings were dismissed (Doc. 40), leaving Spencer's as the sole remaining Defendant.

On May 23, 2023, Plaintiffs filed a motion for preliminary certification and notice of lawsuit (the "preliminary certification motion"). (Doc. 41.)

On June 16, 2023, Spencer's filed a response opposing the preliminary certification motion. (Doc. 44.) That same day, Spencer's filed a motion for summary judgment (Doc. 45), which asserts that "[t]he question of whether Spencer's is an 'employer' under the FLSA is a legal issue for the Court" and "[b]ased on the undisputed facts of this case, Spencer's does not . . . qualify as a joint employer." (Id. at 2.)

On June 26, 2023, Plaintiffs filed a reply in support of the preliminary certification motion. (Doc. 47.)

On July 31, 2023, Plaintiffs filed a response to Spencer's summary judgment motion. (Doc. 51.)

On August 14, 2023, Spencer's filed a reply in support of its summary judgment motion. (Doc. 52.)

**DISCUSSION**

I.     Legal Standard

The FLSA provides "similarly situated" employees with the "right" to bring a collective action against their employer:

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. . . . The right . . . to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor . . . .

29 U.S.C. § 216(b).

The seminal Ninth Circuit case regarding FLSA collective actions is *Campbell v.*

1    *City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018).   In *Campbell*, the Ninth Circuit

2    explained that, under § 216(b), "workers may litigate jointly if they (1) claim a violation

3    of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation,

4    in writing." *Id.* at 1100.  The court further explained that this right "has two permutations":

5    (1) "[t]he right . . . to bring an action by or on behalf of any employee"; and (2) "the right

6    of any employee to become a party plaintiff to any such action"—"that is, the right to bring

7    the collective litigation and the right to join it." *Id.*

8         Turning to the procedures and standards governing FLSA collective actions, the

9    *Campbell* court noted that a judicially-crafted "two-step 'certification' process" had

10   become "near-universal" and therefore chose to "adhere" to the terms "preliminary

11   certification" and "decertification" in the FLSA context because they are "widespread,"

12   with the caveat that adherence to this terminology does not "imply that there should be any

13   particular procedural parallels between collective and class actions." *Id.* at 1100-02.  The

14   court further clarified that, under the two-step certification process, "plaintiffs will, at some

15   point around the pleading stage, move for 'preliminary certification' of the collective

16   action, contending that they have at least facially satisfied the 'similarly situated'

17   requirement," and then "[l]ater, after the necessary discovery is complete, defendants will

18   move for 'decertification' of the collective action on the theory that the plaintiffs' status as

19   'similarly situated' was not borne out by the fully developed record." *Id.* at 1100.

20   Although the court acknowledged that both steps involve evaluating whether the plaintiffs

21   are "similarly situated," it emphasized that courts apply different standards at each step:

> Preliminary certification, as noted, refers to the dissemination of notice to putative collective members, conditioned on a preliminary determination that the collective as defined in the complaint satisfies the "similarly situated" requirement of section 216(b).  At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence.  The level of consideration is "lenient"—sometimes articulated as requiring "substantial allegations," sometimes as turning on a "reasonable basis," but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings.
>
> [ . . . ]
>
> Assuming the collective action has survived its earlier scrutiny, the second

>stage will come at or after the close of relevant discovery. The employer can move for "decertification" of the collective action for failure to satisfy the "similarly situated" requirement in light of the evidence produced to that point. The district court will then take a more exacting look at the plaintiffs' allegations and the record. Because of its purpose and timing, decertification can resemble a motion for partial summary judgment on the "similarly situated" question, and may be combined with cross-motions for summary judgment.

*Id.* at 1109-10 (cleaned up). The court noted that "the two-step process . . . has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose promise is not borne out by the record." *Id.* at 1110.

In *Campbell*, a decertification motion was at issue, so the "more exacting" summary-judgment-like standard applied, as opposed to the "lenient" plausibility-like standard that applies to a conditional certification motion. Nevertheless, because certification and decertification motions both ask the district court to consider whether the plaintiffs are "similarly situated," the discussion in *Campbell* of the meaning of that statutory term is relevant for both steps in the two-step process.

*Campbell* rejected the two prevailing approaches to the "similarly situated" requirement that had emerged up to that point. The first rejected approach, dubbed the "minority approach," would require FLSA collectives "to satisfy the [Rule 23] requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority." *Id.* at 1111. The court concluded that this approach was flawed because it "rests improperly on an analogy to Rule 23 lacking in support in either the FLSA or the Federal Rules of Civil Procedure," imports "rules specific to class actions [which] have evolved to protect the due process rights of absent class members, a consideration not pertinent under the post-1947 FLSA," and fails to take into account the "lower bar" for FLSA collective actions, to which employees have a statutory "right." *Id.* at 1112-13. The second rejected approach, dubbed the "majority approach" or "ad hoc test," would require district courts to "appl[y] a three-prong test that focuses on points of potential factual or legal *dissimilarity* between party plaintiffs" by first considering the "disparate factual and employment settings of the individual plaintiffs," then considering the "various defenses

1 available to defendants which appear to be individual to each plaintiff," and finally
2 considering "fairness and procedural considerations." *Id.* at 1113. The court identified
3 "two major flaws" with this approach: (1) it "offers no clue as to what *kinds* of 'similarity'
4 matter under the FLSA," such that "[i]t is, in effect, a balancing test with no fulcrum"; and
5 (2) the "fairness and procedural considerations" prong "invites courts to import, through a
6 back door, requirements with no application to the FLSA—for example, the Rule 23(b)(3)
7 requirements of adequacy of representation, superiority of the group litigation mechanism,
8 or predominance of common questions." *Id.* at 1114-15.

Having rejected both prevailing approaches, the Court articulated the following definition of "similarly situated" (for FLSA purposes) that courts within the Ninth Circuit must employ:

> [P]arty plaintiffs must be alike with regard to some *material* aspect of their litigation. That is, the FLSA requires similarity of the kind that allows plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. That goal is only achieved—and, therefore, a collective can only be maintained—to the extent party plaintiffs are alike in ways that matter to the disposition of their FLSA claims. If the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment.

*Id.* at 1114 (cleaned up). Put another way, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117. "[D]ifference" is not "disqualifying"—rather, "the requisite kind of similarity" is the "basis for allowing partially distinct cases to proceed together." *Id.*

Under this definition, the members of an FLSA collective do not need to have "overall sameness." *Id.* at 1116. For example, in *Campbell*, it was enough for the plaintiffs to demonstrate that they were subject to the same "overall policy" regardless of whether they "worked on different tasks, in different divisions, and under different supervisors" because "[a] systemic policy is no less common across the collective if those subject to it are affected at different times, at different places, in different ways, or to different degrees." *Id.* In that case, "[t]he district court emphasized also that the [plaintiffs] worked different

hours and claimed overtime of different amounts, including some amounts that might have been de minimis," but the Ninth Circuit stated that "those distinctions go to the individualized calculation of damages or the individualized application of defenses" and "do not preclude collective treatment for the purpose of resolving the common issue that *does* exist, and that must be answered in the first instance." *Id.*  The court elaborated that "individualized damages calculations" are not "inherently inconsistent with a collective action" because "if a common question regarding the employer's liability is answered in the plaintiffs' favor, individualized calculations of work hours may readily be addressed with any of the practices developed to deal with Rule 23 classes facing similar issues." *Id.* Considering that the "amount of damages is invariably an individual question and does not defeat class action treatment" in the Rule 23 context, the court held that "[i]ndividual damages amounts cannot defeat collective treatment under the more forgiving standard of section 216(b) either." *Id.* at 1117.

Finally, the court clarified that "the FLSA does not give district courts discretion to reject collectives that meet the statute's few, enumerated requirements." *Id.* at 1115. "As is true in all FLSA cases," the "background principle" is that "because the FLSA is a remedial statute, it must be interpreted broadly." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 950 (9th Cir. 2019) (citation omitted).  "The 'similarly situated' standard at [the conditional certification] phase is fairly lenient and typically results in certification." *Roberts v. Sidwell Air Freight Inc.*, 2022 WL 16949565, *8 (W.D. Wash. 2022) (quotation omitted).

II.  Analysis

Plaintiffs argue that conditional certification is warranted because Spencer's is "a joint-employer for purposes of the FLSA," "the putative class members were the victims of a single decision, policy, or plan depriving them of overtime," "Spencer's elaborate system of multiple other intermediary entities"—which is "clearly in place for the purpose of avoiding employer obligations, including payment of overtime under the FLSA"—"does not insulate it from its obligation to comply with the FLSA," "Spencer's knew of the

significant work time suffered or permitted to be performed," and "Plaintiff and all current and former installers are a similarly situated homogeneous group [who] all work out of the same Spencer's location, are all covered by identical operation guidelines, share a common set of Spencer's supervisors who know installers are working uncompensated overtime, and are all covered by a common set of overtime policies." (Doc. 41 at 9-10.) Plaintiffs further argue that they have alleged that Spencer's violation of the FLSA was "willful," and because willfulness is a merits consideration that cannot be resolved at this phase of the litigation, notice should be sent to installers who worked within the past three years (the extended recovery period applicable to willful violations). (*Id.* at 10-11.) Plaintiffs seek to provide notice via mail and email with one reminder notice and request a 90-day opt-in period. (*Id.* at 12.)

Spencer's response incorporates its motion for summary judgment by reference (Doc. 44 at 7) and asserts that the Court must "review the merits of Plaintiffs' claims" to determine that "Spencer's was NOT the joint employer of Plaintiffs," which, according to Spencer's, means that the preliminary certification motion should be denied. (*Id.* at 13.) Throughout its response, Spencer's relies on Rule 23 and case law pertaining to class certification. (*Id.* at 2, 4-7, 13.) Spencer's did not respond to Plaintiffs' requests regarding the specifics of the notice—*i.e.*, that notice be sent to installers who worked within the past three years, that Spencer's provide all known contact information including email addresses for the collective, that notice be provided via mail and email with one reminder notice, or that the opt-in period be 90-days.

In reply, Plaintiffs point out that Rule 23 is inapposite and that "confusion" regarding how FLSA collective actions differ from Rule 23 class actions "seems to have affected Spencer's Response." (Doc. 47 at 2-4.) Plaintiffs then—perhaps in an abundance of caution—argue that they should prevail on their preliminary certification motion even if Rule 23 applied and a merits determination were appropriate when deciding this motion. (*Id.* at 5-10.)

The analysis here is not difficult. Spencer's opposes the preliminary certification

request based on legal standards that are inapplicable in this context. Spencer's motion for summary judgment, filed the same day as its response to the preliminary certification motion, asks the Court to determine, as a matter of law, whether Spencer's is the installation employees' joint employer. Without prejudging how that issue will ultimately be resolved on the merits, this framing underscores why the collective is similarly situated (and, thus, why preliminary certification is warranted), as the installation employees clearly "share a similar issue of law or fact material to the disposition of their FLSA claims," *Campbell*, 903 F.3d at 1117—*i.e.*, whether Spencer's is their joint employer. There are also other shared issues of law identified in the parties' briefing—for example, assuming Spencer's *is* the employees' joint employer, whether Spencer's willfully ignored the employees' overtime work.

Because the collective members are similarly situated, the preliminary certification motion is granted. The Court finds it appropriate to rule on this request now, despite the pendency of Spencer's summary judgment motion, because preliminary certification requests should be resolved during an "early stage of the litigation" and are "typically focused on a review of the pleadings." *Campbell*, 903 F.3d at 1109.

Finally, Spencer's response did not address Plaintiffs' requests that notice should be sent to installers who worked within the past three years, that Spencer's provide all known contact information including email addresses for the collective, that notice should be sent via mail and email with one reminder notice, and that the opt-in period should be 90 days, and therefore those requests are granted. Plaintiffs may send notices consistent with this order.

Accordingly,

**IT IS ORDERED** that Plaintiffs' preliminary certification motion (Doc. 41) is **granted**. The collective, as defined in this order, is preliminarily certified.

**IT IS FURTHER ORDERED** that Spencer's shall provide Plaintiffs with all known contact information including email addresses for the collective by December 8, 2023.

**IT IS FURTHER ORDERED** that notice of this lawsuit shall be sent via email and First Class U.S. Mail and include a stamped self-addressed return envelope. The opt-in period shall be 90 days from the date when Plaintiffs are provided with collective members' contact information. Plaintiffs may send one reminder notice to any collective action group member who has not returned an executed Consent to Join form to Plaintiffs' counsel after 30 days.

Dated this 16th day of November, 2023.

Dominic W. Lanza
United States District Judge